## WALKER v. UNITED STATES.

*(District Court, E. D. Missouri, E. D. March 13, 1890.)*

1. ELECTIONS—CHIEF SUPERVISOR—FEES—APPLICATIONS FOR APPOINTMENT.
    Rev. St. U. S. § 2026, which makes it the duty of the chief supervisor of elections to receive applications for appointment as supervisors, and to lay them before the court, and to furnish information to the court with respect to the applicants, does not contemplate that the chief supervisor shall prepare the applicants' petitions, and no fees are payable for such services.
2. SAME—INSTRUCTIONS TO SUPERVISORS.
    Under section 2026, making it the duty of the chief supervisor to "prepare and furnish * * * instructions for the use and direction of the supervisors," and section 2031, allowing him 20 cents for affixing his seal to any document, he is entitled to fees for furnishing instructions authenticated under his seal; the fee being the same per folio as that allowed for drafting papers, examinations, etc.
3. SAME—NOTICES TO SUPERVISORS.
    No fee is allowable "for drafting notices to supervisors to appear to verify registration lists."

**4. SAME—FILING SUPERVISORS' RECEIPTS.**

As no provision of law makes it the duty of the chief supervisor to take receipts from supervisors for books, papers, and blanks furnished them, such receipts are not documents which the law contemplated should be filed as a part of the records of the office, within the meaning of sections 2026, 2031, allowing a fee for filing such documents.

**5. SAME—DRAFTING SUPERVISORS' ACCOUNTS.**

No fee can be allowed the chief supervisor for "drafting accounts of supervisors."

**6. SAME—OATH TO SUPERVISORS' VOUCHERS.**

He is entitled to fees for administering oaths to the supervisors' accounts, and "attaching the certificate or jurat," but not for affixing his seal to the certificate or jurat.

**7. SAME—OATHS TO SPECIAL REPORT.**

As section 2020 requires the supervisors' reports to the chief supervisor to be under oath, he is also entitled to fees for administering oaths to special reports required by him, and affixing his certificate thereto.

**8. SAME—LISTS FOR MARSHAL.**

No fee is allowable to the chief supervisor "for making out a list of supervisors for the use of the United States marshal in making a requisition for funds," and "certifying to correctness of same," nor "for drafting notices to supervisors to report and receive vouchers for service."

**9. SAME—CERTIFYING DUPLICATE VOUCHERS.**

There is no provision of law requiring duplicate vouchers to be made out and attached to the pay-roll, hence no fee is allowable for certifying such duplicates.

**10. SAME—EXPENSES FOR PRINTING BLANKS.**

Under section 2026, requiring the chief supervisor to "prepare and furnish all necessary books, forms, blanks," etc., he is entitled to be reimbursed for expenses "for printing blank forms of application for appointment as supervisors, and for printing blank forms of oaths to be taken by supervisors."

At Law.

*George D. Reynolds,* U. S. Dist. Atty.

*Wm. R. Walker, pro se.*

THAYER, J. This is a suit under the act of March 3, 1887, (24 U. S. St. 505,) by the chief supervisor of elections of this judicial district, for disallowed fees amounting, in the aggregate, to $742.30. Exhibit B, attached to the petition, contains an itemized statement of the fees claimed and disallowed. No further statement of the facts seems to be necessary than that the evidence shows that all the services were rendered for which compensation is claimed. As usually happens in this class of cases, the question is not whether the services were rendered, but whether any law of the United States required them to be rendered, and fixed the compensation therefor.

CONCLUSIONS OF LAW.

1. The first item of the account is for drafting 16 petitions to the United States circuit court for the appointment of certain persons as supervisors of election. Section 2026, Rev. St. U. S., makes it the chief supervisor's duty to receive applications for appointment as supervisors, and to lay them before the court, and to furnish information to the court with respect to the applicants. The statute does not contemplate that the chief supervisor shall prepare petitions for persons seeking appointments under him as supervisors; and, for that reason, the work not being in the line of the chief supervisor's duty, but purely voluntary, he cannot charge for it. It is so held in other districts. *Gayer* v. *U. S.,* 33 Fed. Rep. 625.

2. The next two items, Nos. 2 and 3, are "for drafting instructions to supervisors, containing 50 folios," and "for affixing his official seal" to each copy of the instructions furnished to 315 supervisors. Section 2026, *supra,* makes it the duty of the chief supervisor to "prepare and furnish * * * instructions for the use and direction of the supervisors of election." The instructions so prepared and furnished should, unquestionably, be authenticated by the chief supervisor's seal of office. Section 2031 clearly contemplates that he shall have an official seal, and allows him 20 cents for affixing it to any document. Fifteen cents per folio is also the sum allowed for drafting papers, examinations, etc., and for making and indexing the records of his office. These two items, amounting to $70.50, seem to be valid charges against the United States under the provisions of law last cited, and they are hereby allowed. Similar fees for preparing instructions have been allowed by other courts. *Gayer* v. *U. S., supra; Poinier* v. *U. S.,* 40 Fed. Rep. 139.

3. The next item, No. 4, "for drafting notices to supervisors to appear to verify registration lists," is disallowed. The service in question was, no doubt, properly rendered; but the law does not mention such a service, nor prescribe a fee therefor. It was probably assumed that the supervisors, being sworn officers of the law, would appear before the chief supervisor without notice, when they had duties to perform requiring such appearance. At all events, as the chief supervisor receives a *per diem* allowance, besides fees, it must be held that the *per diem* allowance covers such incidental services, properly rendered, as are not specially mentioned in the statute, or provided for in the fee-bill.

4. The next item, No. 5, "for filing 303 receipts for books and papers," is an improper charge, in my opinion, and is disallowed. Section 2031 allows a filing fee of 10 cents "for filing and caring for every return, report, record, document, or other paper required to be filed;" and section 2026 requires the chief supervisor to "receive, preserve, and file all oaths of office, * * * and all certificates, returns, reports, and records, of every kind and nature, contemplated or made requisite by the provisions" of the act. No provision of the act makes it the chief supervisor's duty to take receipts from supervisors for books, papers, and blanks furnished them; and such receipts, if taken, can hardly be esteemed documents which the law contemplated should be filed as a part of the records of his office. They are mere memorandums, which the chief supervisor may or may not cause to be made. He violates no duty if he omits altogether to take such receipts.

5. Items 6, 7, 8, and 9, "for drafting accounts of supervisors," and for "administering oath thereto as to their correctness," and for "attaching certificates or jurats to such oaths," and "affixing seal to such certificates," may be considered collectively. It is no part of the duty of the chief supervisor, so far as I can ascertain, to draft the accounts of his subordinates. They ought to be competent to do that for themselves. The first of the four items last mentioned, $90.90, is accordingly disallowed. The second and third items of the four last mentioned, "for administering the oath to accounts," and "attaching the certificate or jurat," will

be allowed, in conformity with the decisions in *McDermott* v. *U. S.*, 40 Fed. Rep. 220, and *Gayer* v. *U. S.*, *supra*. I disallow the last of the four items mentioned; that is, the separate charge for affixing the seal to the certificate or jurat. The jurat was not complete without the seal; and the officer should not be allowed to charge for the jurat, and also, as an independent service, for affixing his official seal thereto.

6. The tenth, eleventh, and twelfth items of the account, "for administering oaths to special reports of supervisors," and "for attaching certificate or jurat thereto," and "for affixing seal to jurat," may be collectively disposed of. Section 2020, Rev. St. U. S., requires reports made by supervisors of election to the chief supervisor, to be under oath, although they are sworn officers; and there can be no doubt that it is within the power of the chief supervisor to call for special reports from his subordinates, when he deems necessary; and such special reports, it may fairly be implied, should likewise be under oath. Items 10 and 11 will, accordingly, be allowed; but item No. 12, for affixing seal to the jurats, will be disallowed, for reasons mentioned above, in paragraph 5 of this opinion.

7. The following items, Nos. 13, 14, and 15, "for making out a list of supervisors for the use of the United States marshal in making a requisition for funds," and "for certifying to the correctness of said list," and "for drafting notice to supervisors to report and receive vouchers for service," will each be disallowed. Such services appear to have been wholly voluntary, and no provision is made by law for their payment.

8. A charge is made "for duplicate copies of oaths of supervisors to be attached to pay-roll," and "for certifying to the correctness of the accounts of supervisors," and "for affixing seal to jurat or certificate to the same." Items Nos. 16, 17, and 18. In paragraph 5 of this decision, I have, on the strength of certain decisions cited, allowed the plaintiff compensation for oaths administered to verify the accounts of supervisors, on the ground that the government required such verified accounts as vouchers to the pay-roll. There is no provision of law, however, requiring duplicate vouchers to be made out, and I accordingly disallow the three items last mentioned.

9. The final charge contained in the account, for $17 expended by the plaintiff "for printing blank forms of application for appointment as supervisors, and for printing blank forms of oaths to be taken by supervisors," appears to the court to be a lawful expenditure, and the same will be allowed. Section 2026 requires the supervisor in chief, as before mentioned, to "prepare and furnish all necessary books, forms, blanks, etc." It was not intended that the officer should furnish such books and blanks at his own expense. The intendment is clear that the government would reimburse the supervisor for all such necessary expenditures; and it is also manifest that blanks of the kind mentioned were necessary for the convenient and expeditious discharge of the officer's duties. I am aware that in *Poinier* v. *U. S.*, *supra*, an allowance was refused for providing "blank forms of application for appointment as supervisors;" but, as the chief supervisor is required to present such applications to the court

when received, and to give information to the court respecting the applicants; I think he may very properly prepare blank forms of application, indicating in a general way the information that such applications should contain. The whole charge is accordingly allowed.

The result is that items Nos. 2, 3, 7, 8, 10, 11, and 19 of Exhibit B, aggregating $239, are allowed, and judgment ordered for that amount. The other items of the exhibit, amounting to $503.30, are rejected as not being valid claims against the United States.